### THE CITY OF CHESTER. (Two Cases.)

*(District Court, S. D. New York. November 12, 1883.)*

COLLISION—IDENTITY OF COLLIDING VESSEL—PREPONDERANCE OF PROOF.

> The canal-boat B. F. W. being moored in the slip 100 feet inside of the end of the wharf, some other steam-tug in a high wind got wedged in and across the slip, and was for a few minutes thumping and pounding upon the stern quarter of the B. F. W., from which four hours afterwards a leak was first discovered, and the City of Chester was afterwards libeled as the colliding vessel. She had been past the slip the same morning, but all her evidence was that she had not touched the wharf or entered the slip at all. Upon her testimony, her hourly log, and the libelants' testimony as to the time of the occurrence, *held*, that the libelants had not established the identity of the City of Chester as the colliding vessel by any such preponderance of evidence as entitled them to recover, and the libels were dismissed.

In Admiralty.

*J. A. Hyland*, for libelants.

*Shipman, Barlow, Larocque & Choate*, for claimants.

BROWN, J. The testimony in these cases is irreconcilable as to the identity of the vessel which collided with the libelants' boat, the B. F. Wade, on March 11, 1881. On the part of the libelants several witnesses testify that the B. F. Wade was moored on the north side of pier 46, bows in, with her stern about 100 feet from the end of the

pier; that the steam-tug, under a strong north-west wind, came into and across the slip, her bows striking against the steam-ship moored at the upper side of the slip, and her stern striking the stern of the B. F. Wade; and that the steamer remained there thumping and pounding against the B. F. Wade some 10 or 15 minutes before she was able to get clear and back out. One of the witnesses testified that after the steam-tug went away some one called out, "It is the City of Chester." Others say that they read the name as she lay there pounding.

Some five or six witnesses for the claimant testify that the City of Chester, though she had come across the river that morning for the purpose of towing the Juno from the slip below, and had passed near the end of pier 46, did not touch it, nor go at all inside of the slip between that and pier 47, or come in contact with any boat. The canal-boat was so far inside of the slip that it is difficult to see how the steam-tug, having no business in the slip, could have got in so far, without gross carelessness in handling, notwithstanding the strong north-west wind; and it is not possible that she could have got so far in the slip and become wedged in, as it were, between the two vessels at her bow and her stern, unable to extricate herself for so long a time as the libelants' witnesses testify, without the fact being perfectly known and remembered by the claimants' witnesses, if the tug was, in fact, the City of Chester. Among the libelants' witnesses, one had no interest in favor of the libelants, and two of the witnesses for the defense were without interest for the claimants. The examination of the witnesses on either side did not disclose any ground for doubting their credibility. Other vessels were proved to have come into the slip the same morning, and it was not until four or five hours afterwards that any substantial injury was discovered or apprehended from the drifting of the vessel, whatever vessel it was, against the stern of the Wade. These libels were filed about a month afterwards.

It would seem improbable that persons who were present at the time should mistake as to the vessel which came against the Wade. The fact that the contact came in the ordinary course of vessels drifting in a high wind, and not with any very violent blow, and that it did not lead to any apprehension of serious injury at the time, in connection with the fact that other tugs were going in and out, leaves room for the possibility that the question of what boat it was, was not considered until several hours afterwards, when the Wade was first found to be leaking; and it may have been then that the witness heard some one sing out, "It is the City of Chester." The witness says "that was after she had left," which gives some color to the possibility that the determination of which vessel it was that had rubbed or had pounded against the Wade did not specifically arise in the minds of the witnesses until the leak was discovered; and if the vessel was not supposed to be injured at the time, they might

have mistaken in recalling several hours afterwards which of several vessels that had been there that morning it was. I refer to this as only a possible way in which a mistake might have arisen, because there are additional circumstances which seem strongly to confirm the several witnesses for the claimants, who assert that they did not go inside of the slip at all; that after laying about five minutes near the end of pier 46 she turned about under a starboard wheel, and went across the river without touching the wharf or entering the slip. Three of the witnesses for the libelants fix the time when the Wade was struck with such particularity of circumstance and detail that it cannot be held immaterial or be disregarded in considering the identity of the colliding vessel. The time as thus fixed by the three witnesses, all in different ways, cannot have been earlier than about half past 9 A. M. But the City of Chester kept an hourly log of her movements, made up at the time, and filed daily. The log of March 11, 1881, was produced, and it showed that the trip of the City of Chester from Jersey City to pier 47 was the first that she made that day, and was between 8 and 9 A. M., and that between 9 and 10 she was towing another vessel at Jersey City.

The burden of proof is upon the libelants to make out their case by a fair preponderance of evidence. *The Albert Mason,* 2 FED. REP. 821; 8 FED. REP. 768. The claimants' witnesses, as I have said, are in no way discredited. There are no other material circumstances about the transaction in which they are shown by other evidence to be grossly inaccurate or untrustworthy, so that the court has no satisfactory ground for preferring the testimony of the libelants to that of the claimants, as in the case of *The Florence P. Hall,* 14 FED. REP. 408.

Without being able, therefore, to answer satisfactorily the questions which arise upon the testimony on either side, I am compelled to find that there is no such preponderance of proof as entitles the libelant to recover.

The libel must therefore be dismissed, with costs.